This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40151**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**KEYVIN ALEJANDRO SILVA-MUÑOZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt Baca-Miller, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** A jury convicted Defendant Keyvin Alejandro Silva-Muñoz of one count of aggravated burglary (with a deadly weapon), contrary to NMSA 1978, Section 30-16-4(A) (1963), and one count of bribery or intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A) (1997). Defendant appeals his conviction for aggravated burglary, arguing (1) that the jury instructions resulted in fundamental error because the

jury was not instructed on all elements necessary to convict him of that offense, and (2) there was insufficient evidence to support his conviction. We reverse and remand.

## BACKGROUND

{2}     Because this is a memorandum opinion, we limit our discussion of the facts to those relevant to Defendant's appeal of his aggravated burglary charge.

{3}     On March 7, 2020, Defendant attended a house party of about fifty people on Rayo Del Sol Drive in Albuquerque at the home of Edgar Rivera, Fabian Ortega-Rodriguez, and Gustavo Moreno. At some point during the party, Isaiah Perez—an acquaintance of Defendant—and Isaac—a friend of Rivera and Rodriguez—were involved in a physical altercation outside of the home during which Perez knocked Isaac unconscious. Although Defendant was not involved in the fight, he went outside after Isaac was on the ground and heard Perez saying, "I did it. I did it." Rodriguez picked Isaac up and took him back into the home, placing him on the living room couch to help him recover.

{4}     A few minutes later, Perez entered the home with a group of people, including Defendant, bragging about knocking Isaac out. Rodriguez told Perez and the rest of the group "to get out of [his] house." An additional fight broke out inside the home. Rivera testified that he saw a member of the group pull what looked like a short rifle from his pant leg. Rivera heard a shot fired inside the home, and in response pulled out his own weapon and fired a shot towards the front door frame. The group then ran out the front door shooting inside the house as they ran out.

{5}     Rivera saw bullet holes begin to appear on the door and heard bullets strike the door, walls, and the sliding glass doors at the back of the home as he shut the front door. Moreno and Ailyn Flores Cervantes were injured during the shooting. Rivera heard approximately thirty to forty gun shots before the shooting stopped.

{6}     During this pause, Rivera fired a warning shot towards the front door. The warning shot resulted in a second round of gun shots fired at the home. After the second round of gun shots ended, Defendant either kicked open or forcefully opened the door. Rivera saw a gun in Defendant's hands and shot Defendant. Defendant yelled out, "He shot me," and stepped out of the house. Although Rivera could not identify Defendant at trial, Defendant told Detective Robert Sanchez that he was shot when he entered the home and yelled out, "You shot me," during a video recorded interview that was played for the jury. Defendant also claimed to have entered the home unarmed to get help for his brother who was shot and to ensure no one inside the house was shot.

{7}     Police and emergency services then arrived on scene. Moreno, Cervantes, Defendant, and Defendant's brother—also injured during the shooting—were taken to nearby hospitals for medical care. Officers and crime scene specialists found eighty-six total bullet casings outside the home and on the street. Only two guns were found at the

scene—the one used by Rivera and one owned by an individual who had fled the home during the shooting.

**{8}** The State indicted Defendant with numerous crimes including aggravated burglary with a deadly weapon (firearm) and bribery or intimidation of a witness. The district court granted Defendant's directed verdict motion on all but the aggravated burglary and intimidation of a witness charges, and the jury signed guilty verdicts for those offenses. This appeal followed.

## DISCUSSION

### I.     The Jury Instructions Resulted in Fundamental Error

**{9}** Defendant argues that fundamental error occurred because the district court failed to instruct the jury on all elements of aggravated burglary. Specifically, Defendant contends the district court's failure to instruct the jury with a separate specific intent instruction for aggravated burglary and the district court's failure to instruct the jury on the elements of the predicate felony offense the State claimed Defendant intended to commit inside the house allowed the jury to convict him without finding all the elements of the offense—in particular that Defendant "entered the dwelling with the intent to commit an aggravated battery once inside." Defendant concedes that he did not object to the jury instructions at trial, and therefore, we review Defendant's argument for fundamental error. *See State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448.

**{10}** "Fundamental error exists if it would shock the conscience to affirm the conviction either because of the obvious innocence of the defendant or because a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Sivils*, 2023-NMCA-080, ¶ 9, __ P.3d __ (A-1-CA-39045, Aug. 30, 2023) (alteration, internal quotation marks, and citations omitted). With regard to jury instructions, our review for fundamental error is a two-step process. *Id.* ¶ 10. First, we determine whether error occurred, and do so by asking "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). "Jury instructions cause confusion or misdirection when, through omission or misstatement, they do not provide an accurate rendition of the essential elements of a crime." *Ocon*, 2021-NMCA-032, ¶ 7 (internal quotation marks and citation omitted).

**{11}** The district court instructed the jury on the elements of aggravated burglary, in relevant part, as follows:

> For you to find [D]efendant guilty of aggravated burglary as charged in count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant entered a dwelling without authorization;

2. [D]efendant entered the dwelling *with the intent to commit an aggravated battery* once inside;

3. [D]efendant was armed with a firearm.

(Emphasis added.) This instruction tracks the approved uniform jury instruction containing the statutory elements for aggravated burglary with a deadly weapon. *See* UJI 14-1632 NMRA; *see also* § 30-16-4(A) (defining aggravated burglary in part as "the unauthorized entry of any . . . dwelling . . . with intent to commit any felony or theft therein and . . . [while] armed with a deadly weapon"). Our Supreme Court has stated that uniform jury instructions are presumptively valid and they should be used without substantive alteration when they describe the elements of the crime. *See State v. Lucero*, 2017-NMSC-008, ¶ 30, 389 P.3d 1039.

**{12}** The aggravated burglary instruction identified the uncharged, predicate felony as aggravated battery. "Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another." NMSA 1978, § 30-3-5(A) (1969). The offense is a felony when the defendant inflicts "great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted." Section 30-3-5(C). As Defendant points out, "[i]f intent to commit a felony other than theft is alleged [in the aggravated burglary instruction], the essential elements of the felony must be given if not separately instructed" using UJI 14-140 NMRA. UJI 14-1632 use note 2.

**{13}** Therefore, in addition to the elements of aggravated burglary, the jury should have been instructed on aggravated battery as follows:

In addition to the other elements of [aggravated burglary], you must consider whether the defendant's acts related to the commission of [aggravated battery]. The defendant is not charged with [aggravated battery]. However, the law declares that to be a crime when:

[1.    A person touches or applied force to another person with a firearm; and

2.    The person intended to injure another person.]

UJI 14-140; *see also* UJI 14-322 NMRA (elements instruction for aggravated battery with a deadly weapon).

**{14}** The State concedes this point and the record confirms that the district court did not instruct the jury on the elements of aggravated battery and instructed the jury only as to general intent. However, the State argues that these errors did not amount to fundamental error and therefore reversal is not required. We agree that instructing the jury on general intent alone does not require reversal. Failure to instruct on specific intent did not amount to error here because the jury instructions otherwise conformed to

the statutory elements for aggravated burglary. Nevertheless, we hold that the omission of the elements of aggravated battery amounted to fundamental error and explain.

**{15}** In *State v. Gunzelman*, 1973-NMSC-055, ¶ 29, 85 N.M. 295, 512 P.2d 55, our Supreme Court held that a jury instruction that follows the language of the burglary statute to proscribe the "unauthorized entry of any dwelling with the intent to commit any felony or theft therein," sufficiently instructs the jury on the specific criminal intent required for that crime and no further description of the requisite criminal intent is necessary. *See id.* ¶¶ 23-31 (omissions omitted).

**{16}** Defendant nonetheless argues that "a reasonable juror likely believed that the only intent required by the aggravated burglary instruction" was general intent because the district court provided the jury with a general intent instruction. We disagree and decline to speculate on the jury's belief, particularly in light of the guidance provided by *Gunzelman*. The jury was instructed to consider the instructions as a whole, and the instruction for aggravated burglary included the specific intent element of the offense. *See State v. Stefani*, 2006-NMCA-073, ¶ 27, 139 N.M. 719, 137 P.3d 659 (rejecting the defendant's contention that the giving of a general intent instruction only served to mislead the jury as to what was required to prove "intent" in the elements instruction). "To find guilt based on only a purposeful act," as Defendant argues here, "a juror would have had to ignore the elements instruction as well as the instruction that the instructions are to be read as a whole. We cannot say that a reasonable juror would act in such a manner." *State v. Gee*, 2004-NMCA-042, ¶ 15, 135 N.M. 408, 89 P.3d 80. Therefore, we hold that the jury instructions correctly set forth the required intent to convict Defendant of aggravated burglary.

**{17}** We agree, as does the State, with Defendant's argument regarding the absence of an elements instruction related to aggravated battery and conclude such constituted error. As discussed above, UJI 14-1632 use note 2 states "[i]f intent to commit a felony other than theft is alleged [in the aggravated burglary instruction], the essential elements of the felony must be given if not separately instructed" using UJI 14-140. The UJI 14-140 use note similarly states, "This instruction must be used with every crime that incorporates another crime by reference . . . by requiring the 'intent to commit' . . . unless the referenced crime is separately charged and instructed." We recognize that "a failure to follow a use note does not require automatic reversal," *Gee*, 2004-NMCA-042, ¶ 19, and that the crime of aggravated burglary does not require the State prove the underlying predicate felony itself. *See State v. Romero*, 1998-NMCA-057, ¶ 20, 125 N.M. 161, 958 P.2d 119 ("[W]e note that the crucial factor in the crime of aggravated burglary is whether the defendant had the intent to commit a felony on entering the dwelling, not whether the felony was actually committed." (alteration, emphasis, internal quotation marks, and citation omitted)). However, the charge of aggravated burglary here still requires the jury's consideration of the elements of aggravated battery because the jury must determine the essential element that Defendant "entered . . . with the *intent to commit* [*an aggravated battery*] once inside." UJI 14-1632 (emphasis added). Without instruction on the elements of aggravated battery, we cannot be certain that the jury understood it was required to find that Defendant entered the house

intending to injure someone in the house, an element of aggravated battery. The jury was separately instructed on Defendant's possession of a firearm as an element of aggravated burglary, so that is not a concern, but we do not agree with the State that a juror would necessarily understand the specific intent element of aggravated battery without an instruction. Therefore, failure to instruct the jury on the elements of aggravated battery was error.

**{18}** Accordingly, "we proceed to the second step, asking whether the error is fundamental." *Ocon*, 2021-NMCA-032, ¶ 8. "The general rule is that fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. "Although the omission of an essential element ordinarily is fundamental error, our precedents describe two exceptions under which the omission of an essential element does *not* amount to fundamental error." *Sivils*, 2023-NMCA-080, ¶ 18 (internal quotation marks and citations omitted). "The first exception applies when the jury implicitly finds that the state has proven the omitted element." *Id.* ¶ 19. "This occurs when the jury makes a specific finding that—in the context of the facts and circumstances of the case—necessarily includes a finding of the omitted element." *Id.* "The second exception only applies when the jury's verdict, considered together with the given instructions and the parties' legal and factual presentations, leaves no doubt that the jury *would have found* the omitted element if properly instructed." *Id.* ¶ 21 (internal quotation marks and citation omitted). The State argues that both of these exceptions apply in this case.

**{19}** The State first argues that we may affirm under the first exception because the jury's guilty verdict necessarily means that they disbelieved Defendant's explanation of events and implicitly found Defendant acted with intent to commit aggravated battery. The State contends that, had the jury believed Defendant's claim that he entered the house to get help for his brother and had no intention of hurting anyone, the jury could not have concluded he entered the home with intent to commit aggravated battery, despite the absence of an instruction defining the elements of aggravated battery. Although, as noted above, the jury found that Defendant was carrying a gun, the verdict does not necessarily show that the jury believed Defendant had the specific intent to injure someone in the house when he entered. This Court has rejected "the proposition that a fact[-]finder's disbelief of a criminal defendant's testimony can substitute for affirmative proof of the state's case." *State v. Wynn*, 2001-NMCA-020, ¶ 6, 130 N.M. 381, 24 P.3d 816. Without more than the rejection of Defendant's theory, we cannot hold that the jury necessarily found Defendant intended to injure someone when he entered the house with a weapon. Therefore, we conclude that the first exception does not apply.

**{20}** The State next argues that we may affirm under the second exception because the evidence supporting specific intent to commit aggravated battery was "undeniably strong" and Defendant's theory of the case was "wildly inconsistent" with the evidence presented at trial. We narrowly apply this second exception and affirm "only when proof of the omitted element is so strong that no rational jury could have failed to find that element" and "the missing element was not 'disputed' or 'in issue' at trial." *Sivils*, 2023-

NMCA-080, ¶ 21 (internal quotation marks and citation omitted). "Reversal is mandatory regardless of a defendant's trial strategy if any evidence or suggestion in the facts, however slight would have permitted a rational jury to conclude that the state failed to meet its burden to prove the omitted element beyond a reasonable doubt." *State v. Ancira*, 2022-NMCA-053, ¶ 26, 517 P.3d 292 (text only) (citation omitted).

{21} Defendant disputed at trial that his intent was to shoot or injure someone in the house. Therefore, the second exception does not apply. *See Sivils*, 2023-NMCA-080, ¶ 21. Detective Sanchez testified that, during his interview with Defendant, Defendant repeatedly stated that he was not holding a gun when entering the house, he did not kick down the door, and he was not entering the home to hurt anyone. The State also played a video recording of Detective Sanchez's interview with Defendant. During the interview, Defendant stated that he went into the home to get help for his brother who was shot, and that he wanted to ensure that no one inside the house was shot. Although the jury found as an element of aggravated battery that Defendant was in possession of a gun when he entered the house, there was conflicting evidence about whether Defendant was pointing the gun at whoever might be present or instead whether the gun was pointed at the ground. Without weighing this conflicting evidence, we hold a rational jury could have found "that the State failed to meet its burden" of showing by proof beyond a reasonable doubt that Defendant entered the home with the intent to injure someone inside. *See Ancira*, 2022-NMCA-053, ¶ 26. We, therefore, conclude that "[r]eversal is mandatory" on the failure to instruct the jury on the elements of aggravated battery, the felony offense the State alleged Defendant intended to commit at the time of the burglary. *See id.* (internal quotation marks and citation omitted); *see Sutphin*, 2007-NMSC-045, ¶ 16 (holding that reversal is mandatory where neither of the fundamental error exceptions apply).

{22} Whether the proper remedy is dismissal of the charge or retrial upon remand, however, is dependent on the sufficiency of the State's evidence.

## II.    Sufficiency of the Evidence

{23} Defendant argues that there was insufficient evidence to establish his conviction for aggravated burglary because the evidence did not establish Defendant acted with specific intent to commit aggravated battery once inside the home. Although we are reversing on other grounds, we review Defendant's claim because principles of double jeopardy bar retrial if Defendant's conviction is not supported by sufficient evidence. *See Sivils*, 2023-NMCA-080, ¶ 27. Applying our well-established framework for sufficiency of the evidence, *see State v. Hixon*, 2023-NMCA-048, ¶¶ 44-45, 543 P.3d 235, we hold that the State presented sufficient evidence to convict Defendant.

{24} The jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt that "[D]efendant entered the dwelling with the intent to commit an aggravated battery once inside." *See id.* ¶ 48 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)).

**{25}** Here, the State presented evidence of repeated gun shots at the people inside the home during and after Mr. Rodriguez kicked Isaiah Perez and Defendant out of the home resulting in injuries. The evidence also established that, after learning his brother had been shot, Defendant believed that someone inside the house shot his brother. Defendant either kicked in or forcefully opened the front door of the home and entered while holding a gun out in front of him. "Intent is usually established by circumstantial evidence." *Id.* ¶ 47 (text only) (citation omitted); *see also State v. Valles*, 1972-NMCA-076, ¶ 4, 84 N.M. 1, 498 P.2d 693 ("Intent to injure need not be established by direct evidence but may be inferred from conduct and the surrounding circumstances."). We hold that this evidence is sufficient to support the jury's finding that Defendant entered into the home with the intent to commit aggravated battery.

**{26}** To the extent that Defendant asks that we reweigh evidence and credibility during our review, we decline to do so. "Considering evidence and assessing the credibility of witnesses is the unique purview of the jury." *Hixon*, 2023-NMCA-048, ¶ 53. Therefore, we hold that there was sufficient evidence to convict Defendant of aggravated burglary. *See id.* ¶ 44.

## CONCLUSION

**{27}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{28} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**